UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERESA RENSHAW, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-98-N-3134-S |
| | ] | |
| JEFFERSON STATE COMMUNITY | ] | |
| COLLEGE, et al., | ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED

MAR - 1 2000

**Memorandum of Opinion**

I.   **Introduction.**

The plaintiff, Teresa Renshaw, brings this action against the defendants, Jefferson State Community College, and Dr. Judy M. Merritt, President of Jefferson State Community College, in her individual capacity, claiming violations of her First Amendment rights to free speech and association. The court has for consideration the defendants' motion (Doc. No. 30) for summary judgment, filed November 15, 1999. The issues have been fully briefed by the parties and are now ripe for decision. Upon due consideration, the defendants' motion will be granted and the action dismissed with prejudice.[1]

II.   **Statement of Facts.**

Jefferson State Community College is a state institution of post-secondary education. Dr. Merritt is the president of the college. The plaintiff, Teresa Renshaw, is currently

---

[1] The plaintiff also filed a motion to strike "new" evidentiary material filed by the defendants with their reply brief. Plaintiff's motion (Doc. No. 48). The defendants respond that the additional evidence simply consists of excerpts from depositions of three individuals which were relied upon by the plaintiff in her opposition brief and, thus, is not new evidence. Defendants' response (Doc. No. 48). The court agrees. Accordingly, the plaintiff's motion to strike is denied.



employed in Jeff State's health sciences division as the manager of the office of physical education and athletics. Ms. Renshaw alleges that Jeff State Community College and Dr. Merritt violated her freedom of speech and association under the First Amendment by denying her benefits of employment. Specifically, she alleges that she was denied a promotion to purchasing coordinator, a salary upgrade, and a new computer as a result of her political views and her affiliation with the Alabama Education Association. Her alleged controversial views included areas involving teaching divisions and faculty administration, campus utilization, salary posting, employee morale, her opposition to a revenue referendum known as "MAPS," and her refusal to sign a petition which she characterized as a "loyalty oath," among other things.

### III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same

3

standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Eleventh Amendment.

The defendants contend that the plaintiff's claims against Jeff State Community College should be dismissed because they are barred by the Eleventh Amendment. The Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury," even when the state is not named a party to the action. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "This rule applies whether the action is instituted against a state, a state agency or instrumentality, or a state official." *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). Furthermore, actions for injunctive relief against a state are barred. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Eleventh Amendment immunity applies not only in actions against the state itself but also in actions brought against a "state agency or instrumentality." *Id.* The rule, however, does not apply to circumstances in which Congress has used its Fourteenth Amendment authority to specifically abrogate such immunity.

Federal courts look to applicable state law to determine whether an entity can be considered a state agency or instrumentality. *Harden*, 760 F.2d at 1163. Article I, section 14, of the Alabama Constitution of 1901 provides: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." The immunity from suit provided by this section extends to state universities. *Rigby v. Auburn University*, 448 So. 2d 345, 347 (Ala. 1984); *Taylor v. Troy State University*, 437 So. 2d 472, 474 (Ala. 1983); *Ellison v. Abbott*, 337

So. 2d 756, 757 (Ala. 1976).[2] Furthermore, the Alabama Supreme Court has found the state's community colleges to be arms of the state. *See Shoals Community College v. Colagross*, 674 So. 2d 1311, 1313 (Ala. Civ. App. 1995) ("It is undisputed that Shoals was a post-secondary educational institution operating under the authority and supervision of the State Board of Education. Therefore, it is clear that Shoals is entitled to absolute immunity from suit."); *Williams v. John C. Calhoun Community College,* 646 So. 2d 1, 2 (Ala. 1994). Like Shoals Community College, there is no dispute that Jefferson State Community College operates under the authority of the State Board of Education. Accordingly, it is entitled to Eleventh Amendment immunity. Defendants' motion for summary judgment will be granted as to Jefferson State Community College.

**B. Qualified Immunity.**

The defendants contend that the plaintiff's claims against Dr. Merritt in her individual capacity should be dismissed because Dr. Merritt is entitled to qualified immunity. A government official performing discretionary functions is entitled to qualified immunity "insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would

---

[2] The Eleventh Circuit has also recognized that an Alabama state university is a state instrumentality for Eleventh Amendment immunity purposes. *See Harden*, 760 F.2d at 1163-64 (Eleventh Amendment bars suit under 42 U.S.C. § 1983 against Troy State University).

6

have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 818). A right may only be clearly established where "the contours of the right [are] sufficiently clear [so] that a reasonable official . . . understand[s] that what he is doing violates that right." *Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir. 1996).

Qualified immunity almost always protects government actors; "only in exceptional cases will [they] have no shield against claims made against them in their *individual capacities*." *Lassiter*, 28 F.3d at 1149 (emphasis in original). In fact, qualified immunity almost always applies to damages claims, but as the Eleventh Circuit has noted, "the defense is a narrow one, leaving plaintiffs other avenues of relief." *Id.* at 1149 n.2. A plaintiff may bring a claim for damages against government actors in their official capacity absent Eleventh Amendment immunity, or may seek injunctive relief. *Id.*

In this circuit, courts are instructed to use a two-part test to analyze claims of qualified immunity. The initial burden is on the public official to establish, at the time of the occurrence of the matters complained of, that she was acting within the scope of her discretionary authority. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). Then, in order to impose liability upon defendant government officials, the plaintiff must establish the absence of objective good faith by demonstrating that "the official's alleged misconduct was 'objectively unreasonable' in that it violated clearly established law." *Schopler v. Bliss*, 903 F.2d 1373, 1380 (11th Cir. 1990) (quoting *Harlow*, 457 U.S. at 818). "Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases," and "[f]or qualified immunity to be surrendered, pre-existing law must

7

dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion, for every like-situated, reasonable government agent, that what the defendant is doing violates federal law in the circumstances." *Lassiter*, 28 F.3d at 1150.

There is no dispute that the actions taken by Dr. Merritt were within the scope of her discretionary authority. Accordingly, the burden is on the plaintiff in this instance to establish that Dr. Merritt, while acting in her individual capacity, violated law regarding the plaintiff's right to free speech and association that was clearly established at that time. Specifically, the plaintiff must point to pre-existing case law that was sufficiently like the circumstances faced by Dr. Merritt that she would have known that she was violating the plaintiff's rights under the First Amendment.

In the instant case, the plaintiff simply provides a string cite of cases following her statement that Dr. Merritt was on "notice" "by these authorities and the facts on which they were decided . . . ." Opponent's responsive submission (Doc. No. 40) at 23. The Eleventh Circuit has held that "[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases. . . .[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Rodgers v. Horsley*, 39 F.3d 308, 310-11 (11th Cir. 1994).[3] The plaintiff has provided no

---

[3] In *Rogers v. Miller*, 57 F.3d 986, 992 (11th Cir. 1995), a case cited by the plaintiff in her string cite of cases, the Eleventh Circuit held that the defendants were immune from damages because there was no existing case law clearly establishing that the defendants' conduct constituted an adverse employment action prohibited under the First Amendment. *See also, Martin v. Baugh*, 141 F.3d 1417 (11th Cir. 1998) (holding that no case could be found that would have put a person in defendant's position on notice that the plaintiff's speech was constitutionally protected).

8

discussion of a case that stakes out a bright line which would have controlled Dr. Merritt's actions in this case.[4]

Dr. Merritt is entitled to qualified immunity on the claims against her for damages. Her motion for summary judgment on the damages claims will be granted.

## C. First Amendment Claim.

The only remaining claim is that seeking injunctive relief against Dr. Merritt in her individual capacity. The plaintiff requests that Dr. Merritt be enjoined from violating her federal constitutional rights and be enjoined "to place the plaintiff in the position of employment she would have received absent the constitutional violations." Complaint (Doc. No. 1) at 7.

The First Amendment right to speak freely and to associate with those of one's choice is among the fundamental rights secured under the Constitution. Furthermore, "[a] public employer may not take adverse employment action against a public employee in retaliation for engaging in protected speech." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989)).

The Eleventh Circuit has developed a four-part test to determine whether an employee suffered such retaliation. First, the plaintiff must prove that her speech was protected -- that is, it can be "'fairly characterized as constituting speech on a matter of

---

[4] Whether it would ever be adequate for any plaintiff to merely cite a string of cases to show that the defendant should have known her conduct would violate the law, it is not sufficient here. It is the plaintiff and her attorney who have the burden to demonstrate the existence of factually similar cases. It is not the court's responsibility to wade through a list of cases with no help from counsel. In the future, counsel may wish to remember to insert a brief analysis of cited cases—a road map, if you will.

public concern.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)).[5] If so, the court must "weigh[ ] the employee's first amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Bryson*, 888 F.2d at 1565 (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)). Should the employee prevail on the balancing test, "the fact-finder determines whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee." *Bryson*, 888 F.2d at 1565 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, "the state must prove by a preponderance of the evidence that 'it would have reached the same decision ... even in the absence of the protected conduct.'" *Bryson*, 888 F.2d at 1565 (quoting *Mt. Healthy*, 429 U.S. at 286)).

The court finds that the plaintiff is unable to create a genuine issue of material fact regarding whether protected speech or association played any substantial part in the promotion decision regarding the purchasing coordinator position, the denial of a salary upgrade, and the denial of a new computer.

It is undisputed that in the case of a salary level E position, the Dean, and not defendant Dr. Merritt, chooses one of three applicants who are submitted to him by a search committee composed of the appropriate administrator/supervisor, department chair

---

[5]"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Meyers*, 461 U.S. 138, 146 (1983). The plaintiff's purpose in speaking, therefore, is determinative -- that is, "whether she spoke on behalf of the public as a citizen, or whether [she] spoke for herself as an employee." *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993), *cert. denied*, 114 S. Ct. 2708 (1994).

10

or program coordinator, and a representative from the cost center. The Dean then submits the applicant he chooses to Dr. Merritt for final signature approval. Movants' initial submission (Doc. No. 31) ¶ 13; Opponent's response (Doc. No. 40) ¶ 13. In this case, the plaintiff applied for the position of purchasing coordinator, a salary level E position, which was announced by Jeff State in April 1998. Because only three people applied, including Ms. Renshaw, and one of the other two applicants did not qualify for the position, the search committee recommended both Ms. Renshaw and the second applicant to Dean Drennen. Dean Drennen interviewed Ms. Renshaw and the other applicant, Mr. Kirkland, and recommended Mr. Kirkland for the position. Dr. Merritt approved the selection of Mr. Kirkland for the position. *Id.,* ¶¶ 55-62. Dr. Merritt attested that she did not even know that the plaintiff had applied for the position at issue until after the position was filled. Movants' evidence (Doc. No. 30) tab 20, ¶ 7. Furthermore, the plaintiff does not dispute Dean Drennen's testimony that he did not confer with Dr. Merritt or receive any input from her before making his recommendation as to who he believed should be hired for the position. Movants' supplemental evidence (Doc. No. 44) exhibit 30 at 50. It is clear that Dean Drennen made the decision to recommend Mr. Kirkland and not the plaintiff for the position of purchasing coordinator, and there is no evidence that Dr. Merritt did anything other than to accept the recommendation made to her.[6]

---

[6] The plaintiff also asserts that the adverse employment actions were based in part on the fact that she did not sign a petition (which she characterizes as a loyalty oath), and that Dr. Merritt was aware of individuals who did not sign the petition. Opponent's response (Doc. No. 40) at 6, ¶ 5. Although the plaintiff cites Dr. Merritt's deposition in support of her assertion, Dr. Merritt actually testified that she had no idea that the plaintiff and her husband had not signed the petition. Furthermore, Dr. Merritt testified that the only two people she knew who did not sign the petition were Dean Drennen and Martha Markus, and they told Dr. Merritt themselves that they did not sign the petition. Opponent's supplemental evidence (Doc. No. 39) exhibit 21 at 77-78. Neither Dean Drennen nor Ms. Markus have claimed any adverse employment action as a consequence of their decision to not

11

As to the denial of a salary upgrade, Ms. Renshaw's supervisor, Tom Henderson, requested a salary upgrade for the plaintiff in June of 1998,[7] and Brian Wilkinson, as the head of the department, reviewed the request. It is undisputed that Mr. Wilkinson reviewed the duties that justify a salary upgrade, concluded that those duties did not fall within the plaintiff's job description, and, therefore, instructed Mr. Henderson to assign the duties to those individuals whose job descriptions covered the duties. After this occurred, Ms. Renshaw withdrew her request for the salary upgrade. Movants' initial submission (Doc. No. 31) ¶¶ 66-71. Clearly, Dr. Merritt had nothing to do with the denial of the plaintiff's salary upgrade. The evidence shows that Mr. Wilkinson and Mr. Henderson made the decisions regarding the salary upgrade, and that Dr. Merritt never had an opportunity to become involved because the plaintiff withdrew her request.[8]

Finally, the plaintiff's allegation of being denied a new computer because of her speech and association is simply without merit and, to be quite candid, strikes the court as trivial. The plaintiff apparently felt that she could not prepare a course directory on her computer, which she was required to prepare as the office manager.[9] It is undisputed that plaintiff's supervisors arranged for her to leave her work area to use a computer in another

---

sign the petition. Furthermore, it is clear that Dean Drennen, like the plaintiff, did not sign the petition, yet Dean Drennen was the individual who made the decision to not recommend the plaintiff to Dr. Merritt for the position at issue.

[7] Interestingly, the plaintiff also complains about Mr. Henderson, in that he allegedly criticized her repeatedly about her opposition to "MAPS." Opponent's response (Doc. No. 40) at 8. However, she does not dispute that Mr. Henderson requested a salary upgrade for her. Id. at 4, ¶ 66.

[8] It is undisputed that in October of 1996, Dr. Merritt approved a salary upgrade for the plaintiff. Movants' initial submission (Doc. No. 31) ¶¶ 33-35; Opponent's response (Doc. No. 40) ¶¶ 33-35.

[9] Apparently, the college was required to prepare a course directory in accordance with a directive from the Alabama State Board of Education. Movants' initial submission (Doc. No. 31) ¶ 39.

12

department in order to complete the course directory. However, Ms. Renshaw sent a memo to Dr. Merritt requesting a new computer. After registering her complaint, the plaintiff was not given the course directory assignment, and another employee completed the course directory. *Id.*, ¶¶ 39-41, 44-45. The court finds no evidence that the plaintiff was retaliated against by not getting a new computer, especially since she was no longer required to perform the task which allegedly required a new computer.

Based on the above considerations, the motion for summary judgment will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 1st of March, 2000.

_____
EDWIN NELSON
UNITED STATES DISTRICT JUDGE